**Joshua LONDON, Appellant**

**v.**

**The STATE of Texas, Appellee**

**NO. 01-13-00441-CR**

Court of Appeals of Texas,
Houston (1st Dist.).

Opinion issued June 27, 2017

Rehearing Overruled August 8, 2017

Jani Maselli Wood, Assistant Public Defender, 1201 Franklin Street, 13th Floor, Houston, TX 77002, for Appellant.

Kim Ogg, District Attorney—Harris County, 1201 Franklin, Suite 600, Houston, TX 77002, Eric Kugler, Assistant District Attorney, Harris County, Texas, 1201 Franklin, Suite 600, Houston, TX 77002, for Appellee.

Panel consists of Justices Jennings, Massengale, and Brown.

## OPINION

Michael Massengale, Justice

The sole issue in this appeal is an as-applied constitutional challenge to the imposition of statutory court costs for witness subpoenas in a criminal case. The appellant contends that his constitutional rights to compulsory process to secure favorable witnesses and to confront adverse witnesses[1] were violated by a statute which requires a defendant, upon conviction of a crime, to pay "$5 for summoning a witness."[2]

The appellant pleaded guilty before trial. He has failed to identify any witness he would have called but for the prospect of postjudgment liability for a $5 per witness fee. He also has failed to demonstrate how he was denied the opportunity to confront witnesses against him. As such, we conclude no constitutional harm has been shown by the assessment of court costs, as applied in this case. Accordingly, we affirm.

## I

Appellant Joshua London was arrested for possession of cocaine. The trial court found that he was unable to afford an attorney and appointed counsel to represent him. London never attempted to subpoena or present any witnesses. Instead, on the eve of trial, he pleaded guilty to possession of a controlled substance in an amount between one and four grams,[3] without an agreed recommendation as to punishment.

The trial court sentenced him to 25 years in prison and ordered him to pay $329 in court costs. The judgment did not contain any itemization of how these costs were calculated.

London filed a notice of appeal. The district clerk provided him with a bill of costs that described each component of his court costs. These included $35 in fees for summoning seven witnesses for the State and paying for the expense of serving subpoenas, listed as "Summoning Witness/Mileage."[4] Because the statutory fee for each of the seven witnesses was $5, it does not appear any fees actually were assessed for mileage.

## II

On appeal, London challenges the imposition of statutory court costs for witness subpoenas pursuant to article 102.011(a)(3) of the Code of Criminal Procedure, as applied to him in this case, as a violation of his constitutional rights to compulsory process and confrontation of witnesses.

The Sixth Amendment to the United States Constitution provides that in all criminal prosecutions, "the accused shall enjoy the right ... to be confronted with the witnesses against him" and "to have

---

1.  U.S. Const. amend. VI; Tex. Const. art. I, § 10.

2.  Tex. Code Crim. Proc. art. 102.011(a)(3).

3.  Tex. Health & Safety Code §§ 481.102(3)(D), 481.112(c).

4.  *See* Tex. Code Crim. Proc. arts. 102.011(a)(3) & (b).

compulsory process for obtaining witnesses in his favor." [5] Using nearly identical language, the Texas Bill of Rights provides that "the accused ... shall be confronted by the witnesses against him and shall have compulsory process for obtaining witnesses in his favor...." [6]

A litigant raising an "as applied" challenge to a statute concedes the statute's general constitutionality, "but asserts that the statute is unconstitutional as applied to his particular facts and circumstances." [7] The burden rests on the challenger to establish the statute's unconstitutionality. [8] "Courts must evaluate the statute as it has been applied in practice against the particular challenger." [9] Because the scope of an as-applied challenge is narrow, a court of appeals may not "entertain hypothetical claims" or consider the potential impact of the statute on a potential future claimant, third party, or anyone other than the challenger presently before the court. [10]

Article 102.011 provides, in relevant part:

(a) A defendant convicted of a felony or a misdemeanor shall pay the following fees for services performed in the case by a peace officer:

....

(3) $5 for summoning a witness;

....

(b) In addition ... a defendant required to pay fees under this article shall also pay 29 cents per mile for mileage required of an officer to perform a service listed in this subsection and to return from performing that service.... This subsection applies to:

....

(3) traveling to execute criminal process, to summon or attach a witness, and to execute process not otherwise described by this article. [11]

London asserts that these statutory subpoena fees are unconstitutional as applied to him because he is indigent. He claims that the fees violate his constitutional right to compulsory process as well as his constitutional right to confront his accusers.

The Compulsory Process Clause guarantees "the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt." [12] This right is limited to compulsory process for obtaining witnesses "whose testimony would be both material and favorable to the defense." [13] In order to secure compulsory process, the defendant must make a preliminary showing of the "materiality and favorableness" of the witnesses he seeks. [14] "Were the burden of showing materiality and favorableness not placed on the defendant, 'frivolous and annoying requests [c]ould make the trial endless and unduly burdensome on the Court and all officers

---

5.  U.S. CONST. amend. VI.

6.  TEX. CONST. art. I, § 10.

7.  *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 910 (Tex. Crim. App. 2011).

8.  *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002).

9.  *Lykos*, 330 S.W.3d at 912.

10. *See id.* at 912, 916.

11. TEX. CODE CRIM. PROC. art. 102.011.

12. *Pennsylvania v. Ritchie*, 480 U.S. 39, 56, 107 S.Ct. 989, 1000, 94 L.Ed.2d 40 (1987); *see also* TEX. CONST. art. I, § 10.

13. *Coleman v. State*, 966 S.W.2d 525, 528 (Tex. Crim. App. 1998).

14. *Id.*

thereof.' " [15]

■ London has not identified, either at trial or on appeal, any material and favorable witnesses he wished to present. He did not attempt to issue any subpoenas or compel process for any potential witnesses. Instead, he asserts on appeal that his "constructive notice" of the $5 witness fee precluded him from presenting an adequate defense.[16] This argument ignores precedent that to exercise the right to compulsory process, the defendant bears the burden to "make a plausible showing to the trial court, by sworn evidence or agreed facts, that the witness' testimony would be both material and favorable to the defense." [17] Without a showing that material, favorable witnesses were available to be called by London, we cannot conclude that, as applied in this case, constructive notice of the $5 witness fee operated to deny his right to "have compulsory process for obtaining witnesses in his favor." [18]

■ The Confrontation Clause "provides two types of protections for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination." [19] The Confrontation Clause's key purpose is

> to prevent depositions or ex parte affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness in

which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand fact to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.[20]

The Confrontation Clause generally requires face-to-face confrontation at trial, and "an encroachment upon face-to-face confrontation is permitted only when necessary to further an important public interest and when the reliability of the testimony is otherwise assured." [21]

■ London does not provide a clear argument about how the statutory $5 witness fee operated to deny him his right to confrontation. The fees were assessed only after he pleaded guilty, as specified by the statute.[22] Because these fees are only "assessed on conviction," his opportunity to confront or cross-examine the State's witnesses was not contingent on his post-judgment ability to pay the witness fees.[23] Beyond the bare assertion that requiring him to pay the costs for summoning witnesses is "unfair and unconstitutional," London has not established how, as applied in this case, constructive notice of the $5 witness fee operated to prevent him from exercising his rights to "be confront-

15. *Id.* (quoting *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983)).

16. *See Cardenas v. State*, 423 S.W.3d 396, 399 (Tex. Crim. App. 2014).

17. *Coleman*, 966 S.W.2d at 528.

18. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; *see also Coleman*, 966 S.W.2d at 528.

19. *Ritchie*, 480 U.S. at 51, 107 S.Ct. at 998; *see also* TEX. CONST. art. I, § 10; *Irby v. State*, 327 S.W.3d 138, 145 (Tex. Crim. App. 2010).

20. *Woodall v. State*, 336 S.W.3d 634, 642 (Tex. Crim. App. 2011) (quoting *Mattox v. U.S.*, 156 U.S. 237, 242–43, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895)).

21. *Romero v. State*, 173 S.W.3d 502, 505 (Tex. Crim. App. 2005).

22. *See* TEX. CODE CRIM. PROC. art. 102.011(e).

23. *See id.*

ed" with or by "the witnesses against him."[24]

London asserts that the constitutional harm to him is apparent from his indigence. He relies on the Sixth Amendment and *Gideon v. Wainwright*[25] for the proposition that "a man too poor to hire a lawyer should not be left at the mercy of the power of the State." He further suggests that his indigence itself is the constitutional "harm." Yet he provides no argument or evidence that he was deprived of his confrontation rights because of the prospect of being assessed a $5 witness fee after the conclusion of trial, if he were convicted.[26] He also provides no explanation of how his indigence itself could constitute the relevant harm when he does not suggest that the $5 witness fee caused him to become indigent.

London's appeal is premised on a conclusory assertion that it is "unfair and unconstitutional" to assess court costs against an indigent defendant. That asser-

tion is not supported by any legal analysis. Some courts of appeals have held that indigence does not preclude the recovery of court costs, so long as they are not required to be paid in advance.[27] London's counsel did not disclose these contrary authorities, nor did counsel attempt to distinguish them or argue that they were wrongly decided.

Finally, London notes that indigent litigants in other contexts are not charged a witness fee, such as under the Federal Rules of Criminal Procedure and the recently amended Texas Rules of Civil Procedure.[28] London may have identified an evolving policy trend toward not charging court costs of this type, but that is no argument that the opposite policy choice, to charge the $5 witness fee, is unconstitutional.[29]

In this particular case, which is an as-applied challenge, we need not decide whether indigence is a categorical barrier to assessing (or ultimately collecting) any

---

24. U.S. Const. amend. VI; Tex. Const. art. I, § 10.

25. 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

26. *Cf. James v. Strange*, 407 U.S. 128, 134, 92 S.Ct. 2027, 2031, 32 L.Ed.2d 600 (1972) (in context of constitutional challenge to state statute permitting recoupment of costs of legal defense fees from indigent defendants, distinguishing *Gideon* and observing that with respect to the recoupment scheme, "[t]here is certainly no denial of the right to counsel in the strictest sense"). To the extent appellant's counsel relied at oral argument on the Supreme Court of Idaho's 1923 decision in *State v. Montroy* for the suggestion that charging court costs to a criminal defendant would deter the exercise of procedural rights, *see* 37 Idaho 684, 217 P. 611, 614 (1923), the *Montroy* opinion explicitly stated that the defendant had not asserted any constitutional violation, *id.* at 613, and the decision rested on an Idaho statute which required witness fees to be

"paid out of the county treasury," *id.* at 614 (citing and quoting statute, now codified as Idaho Code § 19-3008).

27. *See, e.g., In re Baker*, No. 05-17-00408-CV, 2017 WL 2276749, at *2 (Tex. App.—Dallas May 25, 2017, orig. proceeding) (mem. op.); *Allen v. State*, 426 S.W.3d 253, 258–59 & n.14 (Tex. App.—Texarkana 2013, no pet.) (citing *Boddie v. Connecticut*, 401 U.S. 371, 374, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971)); *Williams v. State*, 332 S.W.3d 694, 700 (Tex. App.—Amarillo 2011, pet. denied) ("fees are properly collectable by means of a withdrawal notification regardless of a defendant's ability to pay").

28. *See* Fed. R. Crim. P. 17; Tex. R. Civ. P. 145.

29. *Cf. Martinez v. State*, 507 S.W.3d 914, 917–18 (Tex. App.—Waco 2016, no pet.) (holding that the assessment of court costs against indigent criminal defendants but not against indigent civil litigants is not an equal-protection violation).

particular cost of court.[30] London has not met his burden of showing that his constructive notice of the contingent possibility that in the event of his conviction he would be assessed a fee of $5 per witness had the actual effect, as applied to him in this case, of denying him compulsory process or confrontation of the witnesses against him.[31]

The idea that London was compelled to abandon his rights to compulsory process and confrontation of adverse witnesses by the prospect of a $5 witness fee fails for yet another reason. Pleading guilty in this case did not allow London to avoid the $5 witness fee. To the contrary, by pleading guilty, London assured that the fee would be imposed. Thus he would have been in no worse position with respect to his exposure to court costs if he had insisted on his right to a trial by jury, at which time he could have taken advantage of his right to compulsory process to secure favorable witnesses and his right to confront adverse witnesses. Put another way, on the morning of trial, if London ultimately were to be convicted, he would be assessed the $5

fee for witnesses summoned by the State whether or not the trial occurred, whether or not he subpoenaed witnesses in his own defense, and whether or not he took advantage of the opportunity to cross-examine the State's witnesses. As such, the suggestion that, as the statute was applied in this case, it was the prospect of being assessed the $5 witness fee that caused London not to call or confront witnesses is farcical.

## III

With respect to most of the dissenting opinion, there is no controversy. The relevant procedural facts, including the indigence of the appellant, are undisputed. We stipulate the basic legal principles that the dissent postulates at considerable length, as if they were decisive of this appeal: the standard of review; that the fundamental rights to confrontation and compulsory process in criminal proceedings enjoy a historical pedigree; that they apply with equal force to proceedings in Texas courts; and that the rules governing fees in federal courts and in Texas civil proceedings are

**30.** *Cf. Fuller v. Oregon,* 417 U.S. 40, 47, 94 S.Ct. 2116, 2122, 40 L.Ed.2d 642 (1974) (affirming constitutionality of statutory scheme for recouping state's expenses incurred in prosecuting a defendant, including the convicted person's legal defense, and noting that a feature of the approved scheme was that "[t]he convicted person from whom recoupment is sought ... retains all the exemptions accorded other [civil] judgment debtors"). Beyond the scope of the as-applied challenge before us, appellant's counsel has suggested, without providing any evidentiary support, that the imposition of court costs on indigents is unconstitutional because convicted indigents face a prospect, after completing their punishments, of being jailed for failure to pay court costs. We note that even prior to the 2017 amendments to the Code of Criminal Procedure, *see infra* note 32, the Code provided alternative methods of compliance when an indigent person was unable to pay

fines and costs, and to prevent the imprisonment of an indigent person solely because of inability to pay. *See* TEX. CODE CRIM. PROC. arts. 42.15, 43.03, 43.09, 43.091; *see also Tate v. Short,* 401 U.S. 395, 398, 91 S.Ct. 668, 671, 28 L.Ed.2d 130 (1971) (holding that an indigent could not be imprisoned for failure to pay traffic fines); *Ex parte Tate,* 471 S.W.2d 404, 406 (Tex. Crim. App. 1971) (noting the enactment of the 1971 revisions to the Code of Criminal Procedure to provide "alternative means" for collection of fines and costs); *cf. Op.* Tex. Att'y Gen. No. GA-0147 (2004) (explaining that the 1971 amendments to articles 42.15 and 45.041 were responsive to the U.S. Supreme Court's *Tate* opinion). Appellant's counsel has presented no legal argument analyzing these procedural protections or suggesting their constitutional inadequacy.

**31.** *See Lykos,* 330 S.W.3d at 910.

different than those provided by the Texas Code of Criminal Procedure. On these matters, which occupy well over 80% of the dissent's text, there is no disagreement among the panel.[32]

The dissent's abundant chaff fails to obscure the absence of wheat: a near complete failure to engage our legal reasoning.

The entire substance of the dissent's legal reasoning is this conclusory assertion: "although appellant has a fundamental constitutional right to physically confront witnesses who were to testify against him, the only way he was able to secure that right was by bearing the State's costs for it." Dissent at 609–10. Only in a footnote does the dissent acknowledge that the confrontation of witnesses at trial was not actually contingent on the payment of the witness fee. The dissent dismisses that

consideration as "irrelevant" despite the fact that it directly contradicts the assertion that "the only way" for appellant to exercise his confrontation rights was to pay a fee. Dissent at 610 & n.11. Though not acknowledged by the dissent, the witness fees are not assessed against every defendant, but only in the event of a conviction.[33] Because the witness fee in this case was not charged in advance, inability to pay the fee did not prevent the appellant from actually confronting any witness.

Like the appellant's brief, the dissent is unable to produce any legal authority— none—for the proposition that the postjudgment assessment of a nominal witness fee constitutes an impermissible burden on his confrontation rights. Most of the authorities collected by the dissent to extoll the fundamental nature of the confronta-

**32.** To the extent the dissent "urge[s] the legislature to reevaluate the fee system currently in place," Dissent at 612, in the interest of completeness we note that since the argument and submission of this appeal, the recently concluded regular session of the 85th Legislature amended the Code of Criminal Procedure to improve procedural protections relating to the collection of criminal court costs from indigent persons, such as requiring judges to consider a convicted defendant's ability to pay fines and costs at the time of sentencing instead of waiting until default, providing new alternatives to payment in money by adding participation in rehabilitative, educational, and vocational programs to the qualifying community-service activities, and mandating that a defendant be informed of these alternatives. See Act of May 26, 2017, 85th Leg., R.S., H.B. 351, § 4 (to be codified as an amendment to TEX. CRIM. PROC. CODE art. 42.15), eff. Sept. 1, 2017 (requiring court to inquire at time of sentencing about defendant's ability to pay fine and costs, and authorizing court to order alternative to repayment at same time, instead of waiting for default); id. § 7 (to be codified as an amendment to TEX. CRIM. PROC. CODE art. 43.09(h)), eff. Sept. 1, 2017 (adding participation in rehabilitative, educational, and

vocational programs to list of activities considered "community service"); id. § 9 (to be codified as an amendment to TEX. CRIM. PROC. CODE art. 45.014), eff. Sept. 1, 2017 (requiring court to inform defendant of alternatives to payment of fine or costs prior to issuance of arrest warrant in certain circumstances); id. § 11 (to be codified as an amendment to TEX. CRIM. PROC. CODE art. 45.041(a-1), (b)), eff. Sept. 1, 2017 (requiring court to inquire at time of sentencing about defendant's ability to pay fine and costs, and authorizing court to order alternative to repayment at same time, instead of waiting for default); id. § 16 (to be codified as an amendment to TEX. CRIM. PROC. CODE art. 45.049), eff. Sept. 1, 2017 (adding participation in rehabilitative, educational, and vocational programs to list of activities considered "community service"); id. §§ 19, 20 (to be codified as an amendment to TEX. CRIM. PROC. CODE art. 45.0492), eff. Sept. 1, 2017 (adding participation in rehabilitative, educational, and vocational programs to list of activities considered "community service").

**33.** See TEX. CODE CRIM. PROC. art. 102.011(a) ("A defendant convicted of a felony or a misdemeanor shall pay the following fees....").

tion right involved an actual deprivation of the opportunity to confront adverse witness.[34] The other such cases noted by the dissent found no confrontation violation at all.[35] None of those authorities, including the lone compulsory-process case noted by the dissent,[36] involved a fee imposed after trial.

Also like the appellant's brief, the dissent completely fails to acknowledge, distinguish, or take issue with the reasoning articulated in the authorities that have

considered and found no constitutional infirmity in assessing postjudgment fees against an indigent criminal defendant.[37]

## Conclusion

We conclude that London has not established constitutional harm from articles 102.011(a)(3) and 102.011(b) as applied to him. We affirm the judgment of the trial court.

Justice Jennings, dissenting.

**34.** *See Coy v. Iowa*, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988) (placement of screen between defendant and child sexual-assault accuser at trial violated confrontation rights); *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) (invalidating murder conviction when defendant was not permitted to cross-examine a witness who confessed to committing the same crime, or to introduce evidence from the people who heard the confession); *Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968) (invalidating robbery conviction based on transcribed testimony from a preliminary hearing, based on determination that the witness was unavailable for trial); *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) (invalidating robbery conviction based on use of a transcript at trial to present witness testimony from a preliminary hearing); *Greene v. McElroy*, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959) (revocation of security clearance based on undisclosed classified information prevented a meaningful hearing including the confrontation of confidential witnesses); *In re Oliver*, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948) (invalidating summary criminal contempt conviction rendered without a trial, including no opportunity to confront adverse witnesses); *Alford v. United States*, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931) (invalidating mail-fraud conviction after defendant was prevented from conducting reasonable cross-examination of adverse witness); *Kirby v. United States*, 174 U.S. 47, 19 S.Ct. 574, 43 L.Ed. 890 (1899) (invalidating federal law that made the prior conviction of another conclusive evidence of an element of a crime, thus preventing a defendant

from confronting the witnesses who testified in the prior trial); *Shelby v. State*, 819 S.W.2d 544 (Tex. Crim. App. 1991) (invalidating aggravated sexual assault conviction based on denial of opportunity to cross-examine adverse outcry witness on allegations of bias); *Ex parte Johnson*, 654 S.W.2d 415 (Tex. 1983) (invalidation of civil contempt based on violation of judgment debtor's right to confront adverse witnesses); *Coulter v. State*, 494 S.W.2d 876 (Tex. Crim. App. 1973) (invalidating drug conviction based on denial of opportunity to cross-examine narcotics agents about an exhibit that did not satisfy the business-records hearsay exception).

**35.** *See Pennsylvania v. Ritchie*, 480 U.S. 39, 50–54, 107 S.Ct. 989, 998–1000, 94 L.Ed.2d 40 (1987) (plurality op.) (failure to disclose investigation file to defendant charged with rape of a child did not violate Confrontation Clause, when defendant was "able to cross-examine all of the trial witnesses fully"); *In re R.S.*, No. 01-98-00939-CV, 1999 WL 417347, at *1 (Tex. App.—Houston [1st Dist.] June 24, 1999, no pet.) (not designated for publication) (no deprivation of confrontation right when motion for new trial was heard in defendant's absence, but record did not reflect any request for defendant to be present or denial of that right).

**36.** *Smith v. Rankin*, 661 S.W.2d 152, 153 (Tex. App.—Houston [1st Dist.] 1983, orig. proceeding) (constable required advance payment of $10 service fee before serving subpoenas in juvenile delinquency proceeding).

**37.** *See, e.g., Allen*, 426 S.W.3d at 259.

Terry Jennings, Justice, dissenting.

*What distresses me most about our times is the cheerful manner in which we seem prepared to chuck away those blessed [rights] we ... fought for, bled for and got banged up in chokey for down the centuries.* [1]

Appellant, Joshua London, without an agreed punishment recommendation from the State, pleaded guilty to the felony offense of possession of a controlled substance, namely cocaine, weighing less than one gram.[2] After he pleaded true to the allegations in two enhancement paragraphs that he had twice been previously convicted of felony offenses, the trial court assessed his punishment at confinement for twenty-five years. In his sole issue on remand,[3] appellant contends that the "Summoning Witness Fee" assessed against him,[4] an indigent criminal defendant, by the trial court is unconstitutional as applied to him.

Because the majority errs in holding that appellant has not met his burden of establishing the unconstitutionality of Texas Code of Criminal Procedure article 102.011(a)(3) as applied to him, I respectfully dissent.

## Background

A Harris County Grand Jury issued a true bill of indictment, accusing appellant of committing the felony offense of possession of a controlled substance, namely cocaine, weighing less than one gram. The trial court, upon finding appellant indigent, appointed counsel to represent him at trial.[5]

The trial court then ordered the State to "[p]repare and file with the clerk of the [c]ourt a subpoena list of all witnesses [it] intend[ed] to call in its case in chief." Subsequently, the State filed with the trial court and served appellant with its Notice of Intent to Use Expert Testimony, listing the seven witnesses that it intended to call to testify against appellant at trial. That same day, the State also filed with the trial court its Application for Subpoena by State for Witness in District Court and Subpoena by State for Witness in District Court, requesting that the same seven witness be summoned by a peace officer to testify.

On the eve of trial, after voir dire and a jury had been impaneled, appellant pleaded guilty to the felony offense of possession of a controlled substance, namely cocaine, weighing less than one gram. And in addition to sentencing him to confinement for twenty-five years, the trial court ordered appellant to pay $329 in court costs. Included within the $329 of court costs, as

1. JOHN MORTIMER, RUMPOLE À LA CARTE 80 (1990); *see also* Helen T. Verongos, *John Mortimer, Barrister and Writer Who Created Rumpole, Dies at 85*, N.Y. TIMES, Jan. 17, 2009, http://www.nytimes.com/2009/01/17/books/17mortimer.html ("[Sir] John Mortimer[] [was a] barrister, author, playwright and creator of Horace Rumpole, the cunning defender of the British criminal classes....").

2. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(D), 481.115(b) (Vernon 2010).

3. *See London v. State*, 490 S.W.3d 503, 505, 510 (Tex. Crim. App. 2016).

4. *See* TEX. CODE CRIM. PROC. ANN. art. 102.011(a)(3) (Vernon Supp. 2016) (imposing $5 charge on defendant convicted of felony "for summoning a witness").

5. *See id.* art. 1.051(c) (Vernon Supp. 2016) (indigent defendant entitled to appointed counsel); *see also id.* art. 26.04 (Vernon Supp. 2016) (detailing procedures for appointing counsel and explaining defendant determined indigent by trial court presumed indigent for remainder of proceedings).

part of the "Sheriff's Fee," is a $35 charge for "[s]ummoning witness/[m]ileage."[6]

## Standard of Review

We review the constitutionality of a criminal statute de novo as a question of law. *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013); *Maloney v. State*, 294 S.W.3d 613, 626 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). When presented with a challenge to the constitutionality of a statute, we presume that the statute is valid and the legislature has not acted unreasonably or arbitrarily. *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002); *Maloney*, 294 S.W.3d at 626. The party challenging the statute has the burden to establish its unconstitutionality. *Rodriguez*, 93 S.W.3d at 69; *Maloney*, 294 S.W.3d at 626. We must uphold the statute if we can apply a reasonable construction that will render it constitutional. *Ely v. State*, 582 S.W.2d 416, 419 (Tex. Crim. App. [Panel Op.] 1979); *see also Maloney*, 294 S.W.3d at 626 (if statute can be interpreted in two different ways, one of which sustains its validity, we apply interpretation sustaining its validity).

## Constitutionality of "Summoning Witness Fee"

In his sole issue, appellant argues that the "Summoning Witness Fee" assessed against him, an indigent criminal defendant, by the trial court is unconstitutional as applied to him because it violates his constitutional rights to compulsory process and confrontation. *See* U.S. Const. amend. VI; Tex. Const. art. I, § 10; *see also* Tex. Code Crim. Proc. Ann. art. 1.05 (Vernon 2005).

"A litigant raising only an 'as applied' challenge concedes the general constitutionality of the statute, but asserts that the statute is unconstitutional as applied to his particular facts and circumstances." *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 910 (Tex. Crim. App. 2011); *see also Ploeger v. State*, 189 S.W.3d 799, 812 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Because a statute may be valid as applied to one set of facts and invalid as applied to another, a defendant must show that the challenged statute was unconstitutionally applied to him. *Lykos*, 330 S.W.3d at 910. It is not sufficient to show that a statute "may" operate unconstitutionally against the challenger or someone in a similar position in another case. *Id.* at 912; *see also Vuong v. State*, 830 S.W.2d 929, 941 (Tex. Crim. App. 1992) ("That the statute may be, in its operation, unconstitutional as to others is not sufficient."). Courts must evaluate the statute as it has been applied in practice against the particular challenger. *Lykos*, 330 S.W.3d at 912.

Texas Code of Criminal Procedure article 102.011, titled "Fees for Services of Peace Officers," requires a defendant convicted of a felony to "pay ... for services performed in [his] case by a peace officer." Tex. Code Crim. Proc. Ann. art. 102.011(a) (Vernon Supp. 2016). Relevant to the instant case, subsection (a)(3) of article 102.011 requires a criminal defendant to pay $5 for each witness that is summoned by a peace officer, regardless of whether that witness is summoned on behalf of the State or on behalf of the defendant. *Id.* art. 102.011(a)(3). Here, the State issued subpoenas for seven witnesses to testify on its behalf at trial, and upon appellant's conviction, the trial court ordered appellant to pay $35 in court costs for "[s]ummoning

6. *See id.* art. 102.011(a)(3) (imposing $5 charge on defendant convicted of felony "for summoning a witness"); *see also id.* art. 102.011(b) (convicted defendant "shall also pay 29 cents per mile for mileage required for an officer to perform a service listed in this subsection and to return from performing that service").

witness/[m]ileage." [7] Thus, the trial court charged appellant $35 or, more specifically, $5 for each of the seven witnesses that the State summoned to testify against him at trial. *See id.*

Appellant argues that the "Summoning Witness Fee" assessed against him by the trial court is unconstitutional because he, despite his indigence,[8] must, for initially exercising his constitutional right to confrontation, bear the costs for the State's summoning of witnesses against him. In other words, appellant asserts that although "[t]he State ha[d] an absolute right to subpoena ... witnesses in order to present [its] case" against him, it is the requirement that he "pay for th[o]se [witnesses to be] subpoena[ed] [that] is unconstitutional."

The Sixth Amendment to the United States Constitution provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; *to be confronted with the witnesses against him;* to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. CONST. amend. VI (emphasis added); *see also* TEX. CONST. art. I, § 10 ("In all criminal prosecutions the accused ... *shall be confronted by the witnesses against him...*" (emphasis added)); TEX. CODE CRIM. PROC. ANN. art. 1.05 ("In all criminal prosecutions the accused ... *shall be confronted with the witnesses against him...*" (emphasis added)).

As the United States Supreme Court has explained, the Confrontation Clause contained in the Sixth Amendment provides two types of protections for a criminal defendant: the right physically to face those who testify against him and the right to conduct cross-examination. *Pennsylvania v. Ritchie,* 480 U.S. 39, 51, 107 S.Ct. 989, 998, 94 L.Ed.2d 40 (1987); *see also Crawford v. Washington,* 541 U.S. 36, 42, 124 S.Ct. 1354, 1359, 158 L.Ed.2d 177 (2004) (accused has right "to be confronted with the witnesses against him" (internal quotations omitted)); *Coy v. Iowa,* 487 U.S. 1012, 1016, 108 S.Ct. 2798, 2801, 101 L.Ed.2d 857 (1988) (Confrontation Clause "guarantees [a] defendant a face-to-face meeting with witnesses appearing before the trier of fact"). "[I]t is this literal right to 'confront' [a] witness at the time of trial that forms the core of the values furthered by the Confrontation Clause[.]" *California v. Green,* 399 U.S. 149, 157, 90 S.Ct. 1930, 1934–35, 26 L.Ed.2d 489 (1970).

In *Pointer v. Texas,* the Supreme Court held that the Sixth Amendment's guarantee of a criminal defendant's right "to be

---

7. Texas Code of Criminal Procedure article 102.011(b) provides that a criminal defendant "shall also pay 29 cents per mile for mileage required of a[ ] [peace] officer to perform a service" in the defendant's case "and to return from performing that service." *Id.* art. 102.011(b). However, as the majority notes, it does not appear in the instant case that the trial court actually assessed any fees against appellant for mileage.

8. "A defendant who is determined by the court to be indigent is presumed to remain indigent for the remainder of the proceedings in the case...." *Id.* art. 26.04(p); *see also London,* 490 S.W.3d at 509 (explaining appellant in instant case declared indigent prior to pleading and is "presumed to remain indigent for the remainder of the proceedings in the case unless a material change in [his] financial circumstances [has] occur[red]" (internal quotations omitted)).

confronted with the witnesses against him" is applicable to the states by virtue of the Fourteenth Amendment. 380 U.S. 400, 403, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965). In doing so, the Court explained that "the Sixth Amendment's right of an accused to confront the witnesses against him is ... a *fundamental* right," as important as a criminal defendant's "Sixth Amendment[ ] right to the assistance of counsel" and his "Fifth Amendment[ ] guarantee against self-incrimination." *Id.* at 403, 85 S.Ct. at 1067–68 (emphasis added). Further, the court emphasized that the fact that the right is found in the Bill of Rights "reflects [a] belief [by] the Framers [of the Constitution] ... that confrontation [i]s a *fundamental right essential to a fair trial in a criminal prosecution.*" *Id.* at 404, 85 S.Ct. at 1068 (emphasis added). In fact, "[t]here [have been] few subjects, perhaps, upon which th[e] [Supreme] Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an *essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal.*" *Id.* at 405, 85 S.Ct. at 1068 (emphasis added); *see also Alford v. United States,* 282 U.S. 687, 692, 51 S.Ct. 218, 219–20, 75 L.Ed. 624 (1931) (right of cross-examination is "a substantial right and ... essential to a fair trial"). Notably, the right of confrontation is necessary to "expos[e] falsehoods and bring[ ] out the truth in the trial of a criminal case." *Pointer,* 380 U.S. at 404, 85 S.Ct. at 1068.

The right to confrontation has a long history in this country as one of the rights that has been heavily guarded due to its importance. *See Chambers v. Mississippi,* 410 U.S. 284, 294, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973) ("The right[ ] to confront and cross-examine witnesses ... ha[s] long been recognized as essential to due process."). For instance, in 1899, the

Supreme Court described the right of a criminal defendant to "be confronted with the witnesses against him" as "[o]ne of the *fundamental guaranties of life and liberty.*" *Kirby v. State,* 174 U.S. 47, 55, 19 S.Ct. 574, 577, 43 L.Ed. 890 (1899) (emphasis added). And the court noted that because the right is "so essential" it was provided for in the Constitution to ensure that it would be protected from any legislative or judicial action which may seek to degrade it. *Id.* at 56, 19 S.Ct. at 577. Further, the Court has emphasized that a criminal defendant's "right to his day in court" encompasses his "right to examine the witnesses against him," a "basic [right] in our system of jurisprudence." *In re Oliver,* 333 U.S. 257, 273, 68 S.Ct. 499, 507–08, 92 L.Ed. 682 (1948). And the Supreme Court has explained that courts must be willing to act "zealous[ly]" to protect the right of confrontation from "erosion." *Greene v. McElroy,* 360 U.S. 474, 496–97, 79 S.Ct. 1400, 1413–14, 3 L.Ed.2d 1377 (1959); *see also Barber v. Page,* 390 U.S. 719, 725, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255 (1968) ("The right of confrontation may not be dispensed with so lightly."). In fact, when the right to confrontation is denied or significantly diminished, "the ultimate integrity of the fact-finding process" is called into question. *Chambers,* 410 U.S. at 295, 93 S.Ct. at 1046 (internal quotations omitted).

The United States Supreme Court is not alone in recognizing the significance of a criminal defendant's right to confrontation, as the Texas Court of Criminal Appeals and the Texas Supreme Court have also noted its importance. *See Shelby v. State,* 819 S.W.2d 544, 546 (Tex. Crim. App. 1991) ("The Sixth Amendment's right of confrontation is a *fundamental right....*" (emphasis added)); *Ex parte Johnson,* 654 S.W.2d 415, 421 (Tex. 1983) ("The right to be present at trial and confront witnesses

is *fundamental and essential to a fair trial.*" (emphasis added)); *see also In re R.S.*, No. 01-98-00939-CV, 1999 WL 417347, at *3 (Tex. App.—Houston [1st Dist.] June 24, 1999, no pet.) (not designated for publication) (same). In fact, the court of criminal appeals has characterized "[t]he right to confront and cross-examine witnesses" as a right that is "essential to due process and a fair trial." *Coulter v. State*, 494 S.W.2d 876, 881 (Tex. Crim. App. 1973).

Here, appellant's argument presupposes an understanding of the historical roots and widely acknowledged importance of a criminal defendant's right to confrontation. Regardless, according to the majority, appellant has not presented "a clear argument about how the statutory $5 witness fee operated to deny him his right to confrontation." And it reasons that because the trial court assessed the "Summoning Witness Fee" in this case only after appellant was convicted of a felony offense, his right to confrontation could not have been violated. Respectfully, the majority misunderstands appellant's point.

Here, a grand jury indicted appellant for the felony offense of possession of a controlled substance, namely cocaine, weighing less than one gram. After finding that appellant was indigent, the trial court appointed counsel to represent him at trial. *See* Tex. Code Crim. Proc. Ann. art. 1.051(c) (Vernon Supp. 2016) (indigent defendant entitled to appointed counsel); *see also id.* art. 26.04 (Vernon Supp. 2016) (titled "Procedures for Appointing Counsel"). In determining appellant's indigence, the trial court necessarily considered his income,

source of income, assets, property owned, outstanding obligations, necessary expenses, the number and ages of his dependents, and any spousal income that may have been available to appellant. *See id.* art. 26.04(m); *McFatridge v. State*, 309 S.W.3d 1, 6 (Tex. Crim. App. 2010). Notably, the trial court could not have found appellant indigent without appellant making a prima facie showing of indigence. *See Whitehead v. State*, 130 S.W.3d 866, 874 (Tex. Crim. App. 2004). And once appellant was determined to be indigent, he was presumed to remain indigent for the remainder of the proceedings.[9] Tex. Code Crim. Proc. Ann. art. 26.04(p); *see also London v. State*, 490 S.W.3d 503, 509 (Tex. Crim. App. 2016) (explaining appellant in instant case declared indigent prior to pleading and "presumed to remain indigent for the remainder of the proceedings in the case unless a material change in [his] financial circumstances [has] occur[red]" (internal quotations omitted)).

After the trial court found appellant indigent and he demanded a jury trial, the State determined that it, in order to present and prove its case against him, needed to summon seven witnesses to testify against him at trial. Accordingly, the State notified both the trial court and appellant of its decision to subpoena these seven witnesses, and it instructed a peace officer to summon them. Because of the State's decision and because appellant demanded a jury trial,[10] he became responsible for the cost of summoning the State's witnesses against him.

What makes article 102.011(a)(3) unconstitutional as applied to appellant is that it

---

9. Although appellant was presumed indigent for the remainder of his proceedings, the trial court, in connection with appellant's appeal, again found appellant indigent, appointed counsel to represent appellant in his appeal, and ordered that a record be prepared without charge to him.

10. *See* U.S. Const. VI; Tex Const. art. I, § 15; Tex. Code Crim. Proc. Ann. art. 1.12 (Vernon 2005); *Hobbs v. State*, 298 S.W.3d 193, 198 (Tex. Crim. App. 2009).

required him, an indigent criminal defendant, to pay for the witnesses that the State subpoenaed to testify against him. In other words, although appellant had a fundamental constitutional right to physically confront the witnesses who were to testify against him, the only way he was able to secure that right was by bearing the State's costs for it. In effect, he is being penalized for initially setting his case for trial. Given appellant's inability to pay such costs, article 102.011(a)(2) is unconstitutional as applied to him.[11]

Importantly, in this country's federal system, a criminal defendant, whether indigent or not, is not required to bear the cost of the United States government's decision to summon a witness to testify at trial against that defendant. *See* 28 U.S.C. § 1825 (titled "Payment of fees"). Instead, the United States government is required to pay its own fees for the witnesses that it decides must appear at trial and testify. Specifically, "In any case in which the United States or an officer or agency of the United States is a party, the United States marshal for the district *shall pay all fees of witnesses* on the certificate of the United States attorney or assistant United States attorney...." 28 U.S.C. § 1825(a) (emphasis added). Notably, a criminal prosecution by the United States government constitutes a "case in which the United States ... is a party," and thus the United States government must "pay all fees of [the] witnesses" testifying on its behalf against a criminal defendant. *See U.S. Marshals Serv. v. Means*, 741 F.2d 1053, 1060 (8th Cir. 1984) (Gibson, J., concurring) (in criminal cases, "[t]he United

States is [a] party"; it is "the party prosecuting a criminal 'case'"); *Davis v. Bolger*, 496 F.Supp. 559, 566 n.33 (D.D.C. 1980) (under 28 U.S.C. § 1825, "in any case in which the United States is a party," the United States marshal "pay[s] all fees of witness[es]" testifying on government's behalf); *see also Coson v. United States*, 533 F.2d 1119, 1120 (9th Cir. 1976) (where government issues subpoena to witness before grand jury, it bears cost pursuant to 28 U.S.C. § 1825).

Federal law, however, goes even further in protecting indigent criminal defendants. In fact, in addition to requiring the United States government to bear the costs for summoning its own witnesses to testify at a criminal defendant's trial, the government must also pay for the witnesses that are subpoenaed to testify on behalf of an indigent criminal defendant. *See* Fed. R. Crim. P. 17(b); *United States v. Denton*, 535 Fed.Appx. 832, 838 (11th Cir. 2013) (rule 17 "directs district courts to issue a subpoena" on behalf of indigent criminal defendant "at [the] government['s] expense"). As Federal Rule of Criminal Procedure 17 provides: "[T]he court must order that a subpoena be issued for a named witness if the defendant shows an inability to pay the witness's fee and the necessity of the witness's presence for an adequate defense. If the court orders a subpoena to be issued, *the process costs and witness fees will be paid in the same manner as those paid for witnesses [that] the government subpoenas.*" Fed. R. Crim. P. 17(b) (emphasis added). In essence, rule 17 requires "the costs of having witnesses testify [on a defendant's behalf to] be covered

---

11. The majority emphasizes that appellant was not required to pay the $35 in advance of his trial. However, this is irrelevant. It is the fact that appellant is forced to pay to exercise his constitutional right to confrontation, at any time, that renders article 102.011(a)(3) unconstitutional as applied to him. Further, prior to trial, appellant had,

at the very least, constructive notice, if not actual notice based on the State's filings in the trial court, of the costs to be assessed against him for the State's summoning of witnesses. *See Cardenas v. State*, 423 S.W.3d 396, 398–99 (Tex. Crim. App. 2014); *Johnson v. State*, 423 S.W.3d 385, 389 (Tex. Crim. App. 2014).

by the government once a [criminal] defendant demonstrates an inability to pay and a need for the testimony." *United States v. Mata*, No. 15-68, 2015 WL 5552658, at \*3 (E.D. La. Sept. 17, 2015); *see also United States v. Persico*, 645 F.3d 85, 113 (2d Cir. 2011) (although "financially able criminal defendants must bear the cost of bringing their own witnesses to the trial," "a defendant can have the government bear the cost if he persuades the court that he is unable to pay and shows" necessity of witness's testimony (internal quotations omitted)); *In re Pruett*, 133 F.3d 275, 279 (4th Cir. 1997) (issuance and service of subpoenas at government's expense upon showing criminal defendant unable to pay for such issuance and service of subpoenas necessary for defense). Importantly, federal law recognizes the need to "ease the financial burden" placed upon indigent criminal defendants and to "assist them in presenting an effective defense." *United States v. Shayota*, No. 15-CR-00264-LHK, 2015 WL 9311922, at \*3 (N.D. Cal. Dec. 23, 2015) (order).

Further, in our own state, the Texas Rules of Civil Procedure now make clear that an indigent litigant must not bear the burden of any "[c]ourt [c]osts." *See* Tex. R. Civ. P. 145; Supreme Court of Tex., *Final Approval of Revisions to the Texas Rules of Civil Procedure and the Texas Rules of Appellate Procedure and of a Form Statement of Inability to Afford Payment of Court Costs*, Misc. Docket No. 16-9122 (Aug. 31, 2016) (http://www.txcourts.gov/

media/1435934/169122.pdf). In fact, Texas Rule of Civil Procedure 145, titled "Payment of Costs Not Required," provides: "A party who files a Statement of Inability to Afford Payment of Court Costs cannot be required to pay costs," "[a] judgment must not require" such a party "to pay costs," and any "provision in [a] judgment purporting to do so is void."[12] Tex. R. Civ. P. 145(a), (h). In explaining the need for rule 145, the Texas Supreme Court has emphasized that "[a]ccess to the civil justice system cannot be denied because a person cannot afford to pay court costs," and "[t]he issue is not merely whether a person can pay costs, but whether the person can afford to pay costs." Supreme Court of Tex., *Final Approval of Revisions to the Texas Rules of Civil Procedure and the Texas Rules of Appellate Procedure and of a Form Statement of Inability to Afford Payment of Court Costs*, Misc. Docket No. 16-9122 (Aug. 31, 2016) (http://www.txcourts.gov/media/1435934/169122.pdf). Moreover, although "[a] person may have sufficient cash on hand to pay ... fees," that person "cannot afford [to pay] the fees if paying them would preclude [him] from paying for basic essentials, like housing or food."[13] *Id.* Not surprisingly, it is an abuse of discretion for a court to order an indigent litigant to pay costs when he has filed an uncontested affidavit of indigence pursuant to rule 145. *Campbell v. Wilder*, 487 S.W.3d 146, 151–52 (Tex. 2016).

Turning back to appellant's case, I would hold that he has met his burden of

---

12. "Costs" are defined as *"any fee charged by the court or an officer of the court that could be taxed in a bill of costs,* including, but not limited to, filing fees, fees for issuance and service of process, fees for a court-appointed professional, and fees charged by the clerk or court reporter for preparation of the appellate record." Tex. R. Civ. P. 145(c). In the instant case, the trial court taxed the $35 "Summoning Witness Fee" in the "Criminal Bill of Cost" against appellant.

13. The Texas Supreme Court has noted that rule 145 is a "manifestation of the open courts guarantee that 'every person ... shall have remedy by due course of law.'" *Campbell v. Wilder*, 487 S.W.3d 146, 151–52 (Tex. 2016) (alteration in original); *see also* Tex. Const. art. 1, § 13 (open courts provision).

establishing that Texas Code of Criminal Procedure article 102.011(a)(3) is unconstitutional as applied to him, an indigent criminal defendant, because it violates his constitutional right to confrontation. Further, I urge the legislature [14] to reevaluate the fee system currently in place in light of the enormous, and potentially unjustified, burden it too often imposes "on the poorest members of society ensnared in Texas' criminal justice system." [15]

Finally, in regard to the right to compulsory process, it must be noted that this Court has specifically held that "requiring a juvenile [criminal offender] to pay a subpoena fee to produce witnesses" to testify on his own behalf "violates" his constitutional right to compulsory process. *Smith v. Rankin*, 661 S.W.2d 152, 153–54 (Tex. App.—Houston [1st Dist.] 1983, no writ) (juvenile offender guaranteed *same* constitutional rights as adult in criminal proceeding); *see* U.S. Const. amend. VI (constitutional right to compulsory process); Tex. Const. art. I, § 10 (same); Tex. Code Crim. Proc. Ann. art. 1.05 (same).

Jennings, J., dissenting.

---

14. While the majority cites recent actions by the legislature to "improve procedural protections relating to the collection of criminal court costs from indigent persons," the legislature must do much more. At the very least it should no longer require that indigent criminal defendants pay for exercising their constitutionally guaranteed rights in any form.

15. Matt Clarke, *Texas Criminal Court Fees are a Tax on Poor Defendants*, Prison Legal News (Mar. 15, 2014), https://www.prison legalnews.org/news /2014/mar/15/texas-criminal-court-fees-are-a-tax-on-poor-defendants/ (because "people who have been convicted of crimes elicit much less sympa-

thy," "the myriad of criminal court fees and their misuses will most likely continue unabated"); *see also* Eric Dexheimer, *Hard-up Defendants Pay as State Siphons Court Fees for Unrelated Uses*, Statesman (Mar. 3, 2012), http://www.statesman.com/ news/news/special-reports/hard-up-defendants-pay-as-state-siphons-court-fe-1/nRkxj/ ("We're trying to squeeze more money from people who have a hard time getting jobs because they have a criminal record, or have mental illness problems or substance abuse problems.... These fees are taxes on the poor." (quoting executive director of the Texas Criminal Justice Coalition)).