Jennings, J., concurring.
CONCURRING OPINION
Terry Jennings, Justice
I concur in the judgment of the Court and write separately to explain why although I would hold that appellant, Brian Castello, an indigent criminal defendant, has met his burden of establishing that Texas Code of Criminal Procedure article 102.011(a)(3) is unconstitutional as applied to him because it violates his right to confrontation, I agree that under this Court's precedent, we must, at this time, overrule his challenge. See London v. State , 526 S.W.3d 596 (Tex. App.-Houston [1st Dist.] 2017, pet. ref'd).[1]
Appellant, without an agreed recommendation from the State, pleaded guilty to the felony offense of murder.[2] After he pleaded true to the allegation in an enhancement paragraph that he had been previously convicted of a felony offense, the trial court assessed his punishment at confinement for fifty-five years. In his third issue, appellant contends that the "Summoning Witness/Mileage Fee"[3] assessed against him, an indigent criminal defendant, by the trial court is unconstitutional as applied to him.
Background
A Harris County Grand Jury issued a true bill of indictment, accusing appellant of committing the felony offense of murder. The trial court, upon finding him indigent, appointed counsel to represent him at trial.[4]
*623 Prior to trial, the State filed with the trial court its Application for Subpoena by State for Witness in the District Court, requesting that twenty-three witnesses be summoned by a peace officer to testify at trial.[5] The trial court then issued twenty-three subpoenas for the State's witnesses, and a peace officer summoned those twenty-three witnesses.[6] The peace officer filed his returns of service in the trial court.[7]
Subsequently, appellant pleaded guilty to the felony offense of murder. After his plea, but prior to his punishment hearing, the State filed with the trial court another Application for Subpoena by State for Witness in the District Court, requesting an additional witness be summoned by a peace officer to appear and provide appellant's "jail print cards." The trial court issued the subpoena, a peace officer summoned the witness, and he filed his return of service in the trial court.
Following a punishment hearing, the trial court sentenced appellant to confinement for fifty-five years and ordered him to pay $359 in court costs, which included a $120 charge for "[s]ummoning witness/[m]ileage."[8]
Standard of Review
We review the constitutionality of a criminal statute de novo as a question of law. Ex parte Lo , 424 S.W.3d 10, 14 (Tex. Crim. App. 2013) ; Maloney v. State , 294 S.W.3d 613, 626 (Tex. App.-Houston [1st Dist.] 2009, pet. ref'd). When presented with a challenge to the constitutionality of a statute, we presume that the statute is valid and the legislature has not acted unreasonably or arbitrarily. Rodriguez v. State , 93 S.W.3d 60, 69 (Tex. Crim. App. 2002) ; Maloney , 294 S.W.3d at 626. The party challenging the statute has the burden to establish its unconstitutionality. Rodriguez , 93 S.W.3d at 69 ; Maloney , 294 S.W.3d at 626. We must uphold the statute if we can apply a reasonable construction that will render it constitutional. Ely v. State , 582 S.W.2d 416, 419 (Tex. Crim. App. [Panel Op.] 1979) ; see also Maloney , 294 S.W.3d at 626 (if statute can be interpreted two different ways, one of which sustains its validity, we apply interpretation sustaining its validity).
Constitutionality of "Summoning Witness/Mileage Fee"
In his third issue, appellant argues that the Summoning Witness/Mileage Fee assessed against him by the trial court violates his constitutional rights to compulsory process and confrontation because he is an indigent criminal defendant. See U.S. CONST. Amend. VI ; TEX. CONST. art. I, § 10 ; see also TEX. CODE CRIM. PROC. ANN. art. 1.05 (Vernon 2005).
"A litigant raising only an 'as applied' challenge concedes the general constitutionality of the statute, but asserts that the statute is unconstitutional as applied to his particular facts and circumstances." State ex rel. Lykos v. Fine , 330 S.W.3d 904, 910 (Tex. Crim. App. 2011) ; see also Ploeger v. State , 189 S.W.3d 799, 812 (Tex. App.-Houston [1st Dist.] 2006, no pet.). Because a statute may be valid as applied to one set of facts and invalid as applied to another, a defendant must show that the challenged *624 statute was unconstitutionally applied to him. Lykos , 330 S.W.3d at 910. It is not sufficient to show that a statute "may " operate unconstitutionally against the challenger or someone in a similar position in another case. Id. at 912 ; see also Vuong v. State , 830 S.W.2d 929, 941 (Tex. Crim. App. 1992) ("That the statute may be, in its operation, unconstitutional as to others is not sufficient."). Courts must evaluate the statute as it has been applied in practice against the particular challenger. Lykos , 330 S.W.3d at 912.
Texas Code of Criminal Procedure article 102.011, titled "Fees for Services of Peace Officers," requires a defendant convicted of a felony to "pay ... for services performed in [his] case by a peace officer." TEX. CODE CRIM. PROC. ANN. art. 102.011(a) (Vernon 2018). Relevant to the instant case, subsection (a)(3) of article 102.011 requires a criminal defendant to pay $5 for each witness that is summoned by a peace officer, regardless of whether that witness is summoned on behalf of the State or on behalf of the defendant. Id. art. 102.011(a)(3). Here, the State issued subpoenas for twenty-four witnesses to either testify or produce documents on its behalf at trial, and upon appellant's conviction, the trial court ordered him to pay $120 in court costs for "[s]ummoning witness/[m]ileage."[9] Thus, the trial court charged appellant $120 or, more specifically, $5 for each of the twenty-four witnesses that the State summoned to testify or produce documents against him at trial. See ids="7323252" index="76" url="https://cite.case.law/sw3d/330/904/#p910">id.
Appellant argues that the Summoning Witness/Mileage Fee assessed against him by the trial court is unconstitutional because he, despite his indigence, must, for initially exercising his constitutional right to confrontation, bear the costs for the State's summoning of witnesses against him. In other words, appellant asserts that although "[t]he State ha[d] an absolute right to subpoena ... witnesses in order to present [its] case" against him, it is the requirement that he "pay for th[o]se [witnesses to be] subpoena[ed] [that] is unconstitutional."
The Sixth Amendment to the United States Constitution provides:
In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him ; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.
U.S. CONST. Amend. VI (emphasis added); see also TEX. CONST. art. I, § 10 ("In all criminal prosecutions the accused ... shall be confronted by the witnesses against him ...." (emphasis added) ); TEX. CODE CRIM. PROC. ANN. art. 1.05 ("In all criminal prosecutions the accused ... shall be confronted with the witnesses against him ...." (emphasis added) ).
As the United States Supreme Court has explained, the Confrontation Clause contained in the Sixth Amendment provides two types of protections for a criminal defendant: the right physically to face those who testify against him and the right to conduct cross-examination.
*625 Pennsylvania v. Ritchie , 480 U.S. 39, 51, 107 S.Ct. 989, 998, 94 L.Ed.2d 40 (1987) ; see also Crawford v. Washington , 541 U.S. 36, 42, 124 S.Ct. 1354, 1359, 158 L.Ed.2d 177 (2004) (accused has right "to be confronted with the witnesses against him" (internal quotations omitted) ); Coy v. Iowa , 487 U.S. 1012, 1016, 108 S.Ct. 2798, 2801, 101 L.Ed.2d 857 (1988) (Confrontation Clause "guarantees [a] defendant a face-to-face meeting with witnesses appearing before the trier of fact"). "[I]t is this literal right to 'confront' [a] witness at the time of trial that forms the core of the values furthered by the Confrontation Clause[.]" California v. Green , 399 U.S. 149, 157, 90 S.Ct. 1930, 1934-35, 26 L.Ed.2d 489 (1970).
In Pointer v. Texas , the Supreme Court held that the Sixth Amendment's guarantee of a criminal defendant's right "to be confronted with the witnesses against him" is applicable to the states by virtue of the Fourteenth Amendment. 380 U.S. 400, 403, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965). In doing so, the Court explained that "the Sixth Amendment's right of an accused to confront the witnesses against him is ... a fundamental right," as important as a criminal defendant's "Sixth Amendment[ ] right to the assistance of counsel" and his "Fifth Amendment[ ] guarantee against self-incrimination." Id. at 403, 85 S.Ct. at 1067-68 (emphasis added). Further, the Court emphasized that the fact that the right is found in the Bill of Rights "reflects [a] belief [by] the Framers [of the Constitution] ... that confrontation [i]s a fundamental right essential to a fair trial in a criminal prosecution. " Id. at 404, 85 S.Ct. at 1068 (emphasis added). In fact, there have been "few subjects, perhaps, upon which th[e] [Supreme] Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal. " Id. at 405, 85 S.Ct. 1068 (emphasis added); see also Alford v. United States , 282 U.S. 687, 692, 51 S.Ct. 218, 219-20, 75 L.Ed. 624 (1931) (right of cross-examination is "a substantial right and ... essential to a fair trial"). Notably, the right of confrontation is necessary to "expos[e] falsehood[s] and bring[ ] out the truth in the trial of a criminal case." Pointer , 380 U.S. at 404, 85 S.Ct. at 1068.
The right to confrontation has a long history in this country as one of the rights that has been heavily guarded due to its importance. See Chambers v. Mississippi , 410 U.S. 284, 294, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973) ("The right[ ] to confront and cross-examine witnesses ... ha[s] long been recognized as essential to due process."). For instance, in 1899, the Supreme Court described the right of a criminal defendant to "be confronted with the witnesses against him" as "[o]ne of the fundamental guaranties of life and liberty. " Kirby v. State , 174 U.S. 47, 55, 19 S.Ct. 574, 577, 43 L.Ed. 890 (1899) (emphasis added). And the Court noted that because the right is "so essential" it was provided for in the Constitution to ensure that it would be protected from any legislative or judicial action which may seek to degrade it. Id. at 56, 19 S.Ct. at 577. Further, the Court has emphasized that a criminal defendant's "right to his day in court" encompasses his "right to examine the witnesses against him," a "basic [right] in our system of jurisprudence." In re Oliver , 333 U.S. 257, 273, 68 S.Ct. 499, 507-08, 92 L.Ed. 682 (1948). And the Supreme Court has explained that courts must be willing to act "zealous[ly]" to protect the right of confrontation from "erosion." Greene v. McElroy , 360 U.S. 474, 496-97, 79 S.Ct. 1400, 1413-14, 3 L.Ed.2d 1377 (1959) ; see also Barber v. Page , 390 U.S. 719, 725, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255 (1968) ("The right of confrontation *626 may not be dispensed with so lightly."). In fact, when the right to confrontation is denied or significantly diminished, "the ultimate integrity of the fact-finding process" is called into question. Chambers , 410 U.S. at 295, 93 S.Ct. at 1046 (internal quotations omitted).
The United States Supreme Court is not alone in recognizing the significance of a criminal defendant's right to confrontation, as the Texas Court of Criminal Appeals and the Texas Supreme Court have also noted its importance. See Shelby v. State , 819 S.W.2d 544, 546 (Tex. Crim. App. 1991) ("The Sixth Amendment's right of confrontation is a fundamental right ...." (emphasis added) ); Ex parte Johnson , 654 S.W.2d 415, 421 (Tex. 1983) ("The right to be present at trial and confront witnesses is fundamental and essential to a fair trial. " (emphasis added) ); see also In re R.S. , No. 01-98-00939-CV, 1999 WL 417347, at *3 (Tex. App.-Houston [1st Dist.] June 24, 1999, no pet.) (not designated for publication) (same). In fact, the court of criminal appeals has characterized "[t]he right to confront and cross-examine witnesses" as a right that is "essential to due process and a fair trial." Coulter v. State , 494 S.W.2d 876, 881 (Tex. Crim. App. 1973).
Notably, appellant's argument in this case presupposes an understanding of the historical roots and widely acknowledged importance of a criminal defendant's right to confrontation.
Here, a grand jury indicted appellant for the felony offense of murder. After finding that appellant was indigent, the trial court appointed counsel to represent him at trial. See TEX. CODE CRIM. PROC. ANN. art. 1.051(c) (Vernon Supp. 2017) (indigent defendant entitled to appointed counsel); see also ids="10139507" index="125" url="https://cite.case.law/sw2d/494/876/#p881">id. art. 26.04 (Vernon Supp. 2017) (titled "Procedures for Appointing Counsel"). In determining appellant's indigence, the trial court necessarily considered his income, source of income, assets, property owned, outstanding obligations, necessary expenses, the number and ages of his dependents, and any spousal income that may have been available to appellant. See ids="10139507" index="126" url="https://cite.case.law/sw2d/494/876/#p881">id. art. 26.04(m); McFatridge v. State , 309 S.W.3d 1, 6 (Tex. Crim. App. 2010). The trial court could not have found appellant indigent without appellant making a prima facie showing of indigence. See Whitehead v. State , 130 S.W.3d 866, 874 (Tex. Crim. App. 2004). And once the trial court determined that appellant was indigent, he was presumed to remain indigent for the remainder of the proceedings. TEX. CODE CRIM. PROC. ANN. art. 26.04(p) ; see also London v. State , 490 S.W.3d 503, 509 (Tex. Crim. App. 2016) (explaining defendant declared indigent prior to pleading "presumed to remain indigent for the remainder of the proceedings in the case unless a material change in [his] financial circumstances occur[red]" (internal quotations omitted) ).
After the trial court found appellant indigent, the State determined that it, in order to present and prove its case against him, needed to summon twenty-four witnesses to testify and produce documents at trial. Accordingly, the State notified both the trial court and appellant of its decision to subpoena these twenty-four witnesses, and it instructed a peace officer to summon them. Because of the State's independent decision, appellant became responsible for the cost of summoning the State's witnesses against him.
What makes article 102.011(a)(3) unconstitutional as applied to appellant is that it required him, an indigent criminal defendant, to pay for the witnesses that the State subpoenaed to testify against him. In other words, although appellant had a fundamental constitutional right to physically confront the witnesses who were to testify *627 and produce documents against him, the only way he was able to secure that right was by bearing the State's costs for it. In effect, he is being penalized for initially setting his case for trial and having a punishment hearing. Given appellant's inability to pay such costs, article 102.011(a)(2) is unconstitutional as applied to him.[10]
Importantly, in this country's federal system, a criminal defendant, whether indigent or not, is not required to bear the cost of the United States government's decision to summon a witness to testify at trial against that defendant. See 28 U.S.C. § 1825 (titled "Payment of fees"). Instead, the United States government is required to pay its own fees for the witnesses that it decides must appear at trial and testify. Specifically, "[i]n any case in which the United States or an officer or agency of the United States is a party, the United States marshal for the district shall pay all fees of witnesses on the certificate of the United States attorney or assistant United States attorney...." 28 U.S.C. § 1825(a) (emphasis added). A criminal prosecution by the United States government constitutes a case in which the United States is a party, and thus the United States government must "pay all fees of [the] witnesses" testifying on its behalf against a criminal defendant. See U.S. Marshals Serv. v. Means , 741 F.2d 1053, 1060 (8th Cir. 1984) (Gibson, J., concurring) (in criminal cases, "[t]he United States is [a] party"; it is "the party prosecuting a criminal case"); Davis v. Bolger , 496 F.Supp. 559, 566 n.33 (D.D.C. 1980) (under 28 U.S.C. § 1825, "in any case in which the United States is a party," the United States marshal "pay[s] all fees of witnesses" testifying on government's behalf); see also Coson v. United States , 533 F.2d 1119, 1120 (9th Cir. 1976) (where government issues subpoena to witness before grand jury, it bears cost pursuant to 28 U.S.C. § 1825 ).
Federal law, however, goes even further in protecting indigent criminal defendants. In fact, in addition to requiring the United States government to bear the costs for summoning its own witnesses to testify at a criminal defendant's trial, the government must also pay for the witnesses that are subpoenaed to testify on behalf of an indigent criminal defendant. See FED. R. CRIM. P. 17(b) ; United States v. Denton , 535 Fed.Appx. 832, 838 (11th Cir. 2013) ( rule 17"directs district courts to issue a subpoena" on behalf of indigent criminal defendant "at [the] government['s] expense"). As Federal Rule of Criminal Procedure 17 provides:
[T]he court must order that a subpoena be issued for a named witness if the defendant shows an inability to pay the witness's fee and the necessity of the witness's presence for an adequate defense. If the court orders a subpoena to be issued, the process costs and witness fees will be paid in the same manner as those paid for witnesses [that] the government subpoenas.
FED. R. CRIM. P. 17(b) (emphasis added). In essence, rule 17 requires that "the costs of having witnesses testify [on a defendant's behalf] be covered by the government once *628 a [criminal] defendant demonstrates an inability to pay and a need for the testimony." United States v. Mata , No. 15-68, 2015 WL 5552658, at *3 (E.D. La. Sept. 17, 2015) ; see also United States v. Persico , 645 F.3d 85, 113 (2d Cir. 2011) (although "financially able criminal defendants must bear the cost of bringing their own witnesses to the trial," "a defendant can have the government bear the cost if he persuades the court that he is unable to pay and shows" necessity of witness's testimony (internal quotations omitted) ); In re Pruett , 133 F.3d 275, 279 (4th Cir. 1997) (issuance and service of subpoenas at government's expense upon showing criminal defendant unable to pay for such issuance and service of subpoenas necessary for defense). Importantly, federal law recognizes the need to "ease the financial burden" placed upon indigent criminal defendants and "assist them in presenting an effective defense." United States v. Shayota , No. 15-CR-00264-LHK, 2015 WL 9311922, at *3 (N.D. Cal. Dec. 23, 2015) (order).
Further, in our own state, the Texas Rules of Civil Procedure now make clear that an indigent litigant must not bear the burden of any "[c]ourt [c]osts." See TEX. R. CIV. P. 145 ; Supreme Court of Tex., Final Approval of Amendments to the Texas Rules of Civil Procedure and the Texas Rules of Appellate Procedure and of a Form Statement of Inability to Afford Payment of Court Costs , Misc. Docket No. 16-9122 (Aug. 31, 2016) (http://www.txcourts.gov/media/1435934/169122.pdf). In fact, Texas Rule of Civil Procedure 145, titled "Payment of Costs Not Required," provides: "A party who files a Statement of Inability to Afford Payment of Court Costs cannot be required to pay costs," "[a] judgment must not require" such a party "to pay costs," and any "provision in [a] judgment purporting to do so is void."[11] TEX. R. CIV. P. 145(a), (h). In explaining the need for rule 145, the Texas Supreme Court has emphasized that "[a]ccess to the civil justice system cannot be denied because a person cannot afford to pay court costs" and "[t]he issue is not merely whether a person can pay costs, but whether the person can afford to pay costs." Supreme Court of Tex., Final Approval of Amendments to the Texas Rules of Civil Procedure and the Texas Rules of Appellate Procedure and of a Form Statement of Inability to Afford Payment of Court Costs , Misc. Docket No. 16-9122 (Aug. 31, 2016) (http://www.txcourts.gov/media/1435934/169122.pdf). Moreover, although "[a] person may have sufficient cash on hand to pay ... fees," that person "cannot afford [to pay] the fees if paying them would preclude [him] from paying for basic essentials, like housing or food."[12] Id. Not surprisingly, it is an abuse of discretion for a court to order an indigent litigant to pay costs when he has filed an uncontested affidavit of indigence pursuant to rule 145. Campbell v. Wilder , 487 S.W.3d 146, 151-52 (Tex. 2016).
*629 Turning back to appellant's case, I would hold that he has met his burden of establishing that Texas Code of Criminal Procedure article 102.011(a)(3) is unconstitutional as applied to him, an indigent criminal defendant, because it violates his constitutional right to confrontation. However, I recognize that this Court has already rejected arguments identical to those presented by appellant in this case. See London , 526 S.W.3d at 598-602, 604 ; see also Robles v. State , No. 01-16-00199-CR, 2018 WL 1056482, at *6 (Tex. App.-Houston [1st Dist.] Feb. 27, 2018, pet. filed) (mem. op., not designated for publication); Buford v. State , No. 01-16-00727-CR, 2017 WL 6759199, at *6-7 (Tex. App.-Houston [1st Dist.] Dec. 28, 2017, pet. ref'd) (mem. op., not designated for publication); Macias v. State , 539 S.W.3d 410, 421-24 (Tex. App.-Houston [1st Dist.] 2017, pet. ref'd) ; Precedent , BLACK'S LAW DICTIONARY (10th ed. 2014) (defining precedent as "[a] decided case that furnishes a basis for determining later cases involving similar facts or issues").
Accordingly, I respectfully request that the Texas Court of Criminal Appeals overrule this Court's decision in the current case. See Benge v. Williams , 472 S.W.3d 684, 738 (Tex. App.-Houston [1st Dist.] 2014) (Jennings, J., dissenting from denial of en banc reconsideration) (although "we are not free to disregard binding precedent," as appellate court justices, "we ... are certainly free to point out any flaws in the reasoning of the [binding] opinions"), aff'd , No. 14-1057, 548 S.W.3d 466, 2018 WL 2374640 (Tex. May 25, 2018) ; Jones v. State , 962 S.W.2d 96, 99 (Tex. App.-Houston 1997) (Taft, J., concurring) (noting although "we are bound by precedent ..., we are not gagged" by it), aff'd , 984 S.W.2d 254 (Tex. Crim. App. 1998). Further, I continue to urge the legislature to reevaluate the fee system currently in place in light of the enormous, and potentially unjustified, burden it too often imposes "on the poorest members of society ensnared in Texas' criminal justice system."[13]

See also Robles v. State , No. 01-16-00199-CR, 2018 WL 1056482, at *6 (Tex. App.-Houston [1st Dist.] Feb. 27, 2018, pet. filed) (mem. op., not designated for publication) (relying on London v. State , 526 S.W.3d 596 (Tex. App.-Houston [1st Dist.] 2017, pet. ref'd) and overruling defendant's argument "that the statute authorizing the $25 court fee imposed in th[e] case for 'Summoning Witness/Mileage' is unconstitutional as applied" to him because he is indigent and "could not bear the costs associated with his defense-in particular, the costs ... of exercising his right to confront witnesses"); Buford v. State , No. 01-16-00727-CR, 2017 WL 6759199, at *6-7 (Tex. App.-Houston [1st Dist.] Dec. 28, 2017, pet. ref'd) (mem. op., not designated for publication); Macias v. State , 539 S.W.3d 410, 421-24 (Tex. App.-Houston [1st Dist.] 2017, pet. ref'd).

See Tex. Penal Code Ann. § 19.02(b), (c) (Vernon 2011).

See Tex. Code Crim. Proc. Ann. art. 102.011(a)(3), (b) (Vernon 2018) (imposing $5 charge on defendant convicted of felony "for summoning a witness" and requiring defendant to pay "29 cents per mile for mileage required of an officer to perform a service ... and to return from performing that service").

See itation index="158" url="https://cite.case.law/citations/?q=Tex.%20Code%20Ann.%20%C2%A7%2019.02">id. art. 1.051(c) (Vernon Supp. 2017) (indigent defendant entitled to appointed counsel); see also itation index="159" url="https://cite.case.law/citations/?q=Tex.%20Code%20Ann.%20%C2%A7%2019.02">id. art. 26.04 (Vernon Supp. 2017) (detailing procedures for appointing counsel and explaining defendant determined indigent by trial court presumed indigent for remainder of proceedings).

See itation index="160" url="https://cite.case.law/citations/?q=Tex.%20Code%20Ann.%20%C2%A7%2019.02">id. arts. 24.01 (issuance of subpoenas), 24.03 (Vernon 2009) (subpoena and application therefor).

See itation index="161" url="https://cite.case.law/citations/?q=Tex.%20Code%20Ann.%20%C2%A7%2019.02">id. art. 24.04 (Vernon 2009) (service and return of subpoena).

See itation index="162" url="https://cite.case.law/citations/?q=Tex.%20Code%20Ann.%20%C2%A7%2019.02">id.

See itation index="163" url="https://cite.case.law/citations/?q=Tex.%20Code%20Ann.%20%C2%A7%2019.02">id. art. 102.011(a)(3), (b).

A criminal defendant "shall also pay 29 cents per mile for mileage required of an officer to perform a service" in the defendant's case "and to return from performing that service." Id. art. 102.011(b). However, it does not appear in the instant case that the trial court actually assessed any fees against appellant for mileage.

The majority, as it did in London , emphasizes that appellant was not required to pay the $120 in advance of his trial. However, this is irrelevant. It is the fact that appellant is forced to pay to exercise his constitutional right to confrontation, at any time, that renders article 102.011(a)(3) unconstitutional as applied to him. Further, prior to trial, appellant had, at the very least, constructive notice, if not actual notice based on the State's filings in the trial court, of the costs to be assessed against him for the State's summoning of witnesses. See Cardenas v. State , 423 S.W.3d 396, 398-99 (Tex. Crim. App. 2014) ; Johnson v. State , 423 S.W.3d 385, 389 (Tex. Crim. App. 2014).

"Costs" are defined as "any fee charged by the court or an officer of the court that could be taxed in a bill of costs , including, but not limited to, filing fees, fees for issuance and service of process, fees for a court-appointed professional, and fees charged by the clerk or court reporter for preparation of the appellate record." Tex. R. Civ. P. 145(c) (internal quotations omitted). In the instant case, the trial court taxed the $120 Summoning Witness/Mileage Fee in the "Criminal Bill of Cost" against appellant.

The Texas Supreme Court has noted that rule 145 is a "manifestation of the open courts guarantee that 'every person ... shall have remedy by due course of law.' " Campbell v. Wilder , 487 S.W.3d 146, 151-52 (Tex. 2016) (alteration in original); see also Tex. Const. art. 1, § 13 (open courts provision).

Matt Clarke, Texas Criminal Court Fees are a Tax on Poor Defendants , Prison Legal News (Mar. 15, 2014), https://www.prisonlegalnews.org/news/2014/mar/15/texas-criminal-court-fees-are-a-tax-on-poor-defendants/ (because "people who have been convicted of crimes elicit much less sympathy," "the myriad of criminal court fees and their misuses will most likely continue unabated"); see also Eric Dexheimer, Hard-up Defendants Pay as State Siphons Court Fees for Unrelated Uses , Statesman (Sept. 20, 2012), https://www.statesman.com/news/special-reports/hard-defendants-pay-state-siphons-court-fees-for-unrelated-uses/o Nyf6HCFKbA4Nlq0UCLiRM/ ("We're trying to squeeze more money from people who have a hard time getting jobs because they have a criminal record, or have mental illness problems or substance abuse problems.... These fees are taxes on the poor." (quoting executive director of the Texas Criminal Justice Coalition) ).